**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **JOHN T. TAYLOR and** | ) | |
| **MICHAEL J. DOOLEY,** | ) | |
| **on behalf of themselves and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No. _____** |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **TROJAN LABOR OF** | ) | |
| **NASHVILLE, LLC,** | ) | |
| **d/b/a TROJAN LABOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs John T. Taylor and Michael Dooley bring this complaint against Defendant Trojan Labor of Nashville, LLC, doing business as Trojan Labor, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the law of the State of Tennessee, for willfully failing to compensate them for hours worked and for violating health and safety requirements, and would allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs brings this action as a collective action, on behalf of themselves and all persons similarly situated ("Collective Group"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by Trojan Labor of Nashville, LLC, d/b/a Trojan Labor (hereinafter "Trojan").  Specifically, Plaintiffs seek redress for Trojan's willful failure to compensate them for hours worked at the applicable federal minimum wage and/or prevailing

1

wage and for failing to compensate them for hours worked in excess of 40 hours per week at one and one half times the regular hourly rate.

2.      Plaintiffs also bring claims under Tennessee law on behalf of themselves and a class of employees against Trojan for unjustly reaping the economic benefit of work performed by the Class members for which Trojan egregiously failed to compensate them.

## PARTIES

3.      Plaintiff John T. Taylor is a citizen of the State of Tennessee and resident of Davidson County, Tennessee.

4.      Plaintiff Michael Dooley is a citizen of the State of Tennessee and resident of Davidson County, Tennessee.

5.      Defendant Trojan Labor of Nashville, LLC, which does business as Trojan Labor, is a domestic limited liability company authorized to do business in the State of Tennessee.   Its principal place of business is located at 271 Hermitage Avenue, Nashville, Tennessee 37210-2157, and process can be served on this Defendant through its registered agent, Jolene Dressel, at the same address.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, through the vehicle of 29 U.S.C. § 216(b), and 28 U.S.C. § 1367.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because the parties resides in this district, a substantial portion of the events or omissions giving rise to the claim occurred in this district, and Defendant conducts substantial, continuous and systematic commercial activities in this District.

2

## FACTUAL BACKGROUND

8.     Trojan operates a temporary staffing service that provides primarily unskilled and semi-skilled labor in industries such as construction, demolition, manufacturing, hospitality, etc. Trojan is a franchisee of a Hire Quest, LLC, a South Carolina entity that franchises temporary staffing services throughout the southeastern United States. Trojan has three Tennessee offices, in Nashville, Clarksville, and Columbia.

9.     Upon information and belief, at all times relevant Trojan has employed tens, if not hundreds of employees and has had annual dollar volume of sales in excess of five (5) million dollars.

10.     For the remainder of this Complaint, Plaintiffs use the term "employees" to refer to themselves and the other similarly-situated individuals that Trojan hires to provide temporary labor to its clients. Plaintiffs make no allegations on behalf of Trojan's administrative or managerial employees.

11.     Trojan recruits its employees from the most marginalized and exploited demographic groups in the area, in particular the homeless and semi-homeless.

12.     Mr. Taylor began working for Trojan on or about June 1, 2012. His last day with Trojan was on or about October 8, 2012. Mr. Taylor's primary job duty was to provide general labor on behalf of Trojan to Trojan's clients engaged in the construction industry.

13.     Mr. Dooley began working for Trojan on or about July 15, 2010. His last day with Trojan was on or about January 16, 2013. Mr. Dooley's primary job duty was to provide general labor on behalf of Trojan to Trojan's clients engaged in industrial clean-up and construction.

3

14.     Each work day, Plaintiffs and similarly-situated employees arrived at Trojan's offices at approximately 4:00 a.m. to be given a work assignment, referred to as a "work ticket." Trojan's stated policy is that employees interested in receiving a work ticket on a particular day should arrive to the office "very early," but it was understood by Plaintiffs that "very early" meant approximately 4:00 a.m.

15.     As employees arrive, they must sign their names to a sign-in sheet evidencing the order in which they arrived to the office and their interest in a work ticket.

16.     After signing in, employees wait in the Trojan office lobby or outside the office to be given a work ticket.

17.     In theory, work tickets are given in the order in which employees arrive at the office.   For that reason, employees arrive very early, to be one of the first employees to sign in and to receive a work ticket.

18.     In practice, however, Trojan often hands out work tickets based on favoritism, the number of hours a given employee has worked that week, or other considerations.   For that reason, employees sometimes wait at a Trojan office for hours for a work ticket, even as other employees receive their ticket that day.

19.     If the client requests more than one employee for the day, Trojan will organize the employees into groups, placing with each group one employee that has a car.   Trojan then requires the employee with the car to drive the other employees to the work site.   Trojan exercises sole control over these carpool assignments.   Participating in the carpool is a condition for receiving a work ticket.

4

20.     Trojan does not verify whether any of the driving employees have valid driver's licenses or auto insurance.  Plaintiffs are aware of numerous occasions when Trojan has required employees to ride with drivers who have neither a license nor insurance.

21.     Trojan does not verify whether the driving employees are fit to drive to the work site on any given work day.  Plaintiffs are aware of occasions where a carpool driver has admitted to being intoxicated or was seen drinking while driving employees to the work site.

22.     Trojan charges the cost of mileage from the passenger employees' pay.  Trojan typically deducts from their pay $6.00 per day per employee for carpooling, representing $3.00 for the ride to the site and $3.00 for the return trip.

23.     The carpooling requirement is not related to safety or parking concerns of the clients, but is instead a requirement imposed by Trojan for its own benefit.

24.     Once at the work site, the employees report to somebody affiliated with Trojan's client, who directs their work for the day.

25.     While Trojan's clients set the exact work schedule once an employee is on site, Plaintiffs typically worked eight (8) hours per day for each client at the work site.

26.     At the end of the day, the client fills out the employee's work ticket, indicating the hours the employee worked and any other relevant information.

27.     When an employee returns to the Trojan office with a signed work ticket, Trojan pays the employee for the hours worked that are shown on the ticket.

28.     Because Mr. Taylor and Mr. Dooley proved to be reliable and hard workers, Trojan's clients often requested that they return the next day or for the duration of a long-term project.

5

29.     When such a request is made by a client, Trojan will give the employee an on-going work assignment, referred to as a "repeat ticket."

30.     At the end of the work day, when the client signs the employee's ticket, if the client marks "repeat" on the ticket, the employee must then return to the Trojan office to turn in the work ticket.

31.     Despite the fact that an employee with a repeat work ticket knows what his work assignment will be the next day and for the duration of the ticket, Trojan still requires the employee to go to the Trojan office in the morning, rather than going directly to the work site.

32.     In fact, Trojan's stated policy is that all employees with repeat tickets must sign in at the Trojan office at least one hour before the client's designed start time at the work site.

33.     During this hour, Trojan organizes carpool groups and, at some point, releases the employees to travel to the work site.

34.     This policy ("1-hour Policy") benefits only Trojan. It allows Trojan to make sure that all employees on a repeat ticket are present and on-time, which ensures that Trojan will be able to bill the client for the maximum number of man hours. It provides Trojan with time to communicate with the client about its needs for the day. It also gives Trojan the opportunity to provide employees any instructions, information, special equipment, or training needed.

35.     Typically, Trojan's clients require employees to be at the work site between 6:30 and 7:00 a.m. A 7:00 a.m. start time, for example, means that employee has to arrive and sign in at the Trojan office no later than 6:00 a.m.

36.     Employees are not free, after signing in, to use this hour for their own purposes. Instead, Trojan instructs the employees to wait at the Trojan office until instructions are given about carpooling.

37.    Employees spend much of this hour waiting in the Trojan lobby.  On occasion, Trojan uses this time for administrative or other purposes.  For example, Trojan sometimes asks employees who are waiting to update their personnel or tax records, to receive instructions on safety or other topics, to pick up special equipment or gear, etc.

38.    The nature of the services Trojan provides to its clients requires Trojan to have employees in the Trojan offices in the morning who are essentially on-call for clients that day.

39.    Waiting is an integral part of the employees' job, and an integral part of Trojan's business model.

40.    Trojan employees are not compensated for the many hours they wait at the Trojan office after signing in and waiting to receive a work ticket.

41.    Trojan employees are not compensated for the time they spend traveling back to the Trojan office to turn in their work ticket at the end of the work day.

42.    Trojan employees are not compensated for the hour they spend waiting at the Trojan office and traveling to the work site on a repeat ticket under the 1-hour Policy.

43.    While employed by Trojan, Mr. Taylor was given a number of repeat tickets, including but not limited to:

    a.  June 6-12, 2012, for Trojan's client Southland Constructors;

    b.  June 18-20, 2012, Southland Constructors;

    c.  June 25-26, 2012, Bacon Construction;

    d.  June 28-29, 2012, Carter Group;

    e.  July 6-9, 2012, Hardcastle Construction;

    f.  July 11-20, 2012, CIC Construction;

    g.  August 9-20, 2012, Demo Plus, Inc.;

7

      h.   August 27-28, 2012, Talocity;

      i.   August 29-October 8, 2012, Brand Imaging Group.

44.    Mr. Taylor spent one hour on each day of these repeat tickets working for Trojan as per the 1-hour Policy, time for which Trojan has failed to compensate him.

45.    While employed by Trojan, Mr. Dooley was given a number of repeat tickets, including but not limited to:

      a.   July 21-24, 2010, for Trojan's client VCC;

      b.   August 10-September 7, 2010, W.T. Dubois;

      c.   October 16-November 24, 2010, Beech Construction;

      d.   December 30, 2010 – January 8, 2011, Demo Plus, Inc.;

      e.   April 12-May 26, 2011, Demo Plus, Inc.;

      f.   June 3-July 28, 2011, Valley Interior Products;

      g.   August 30-September 2, 2011, Tenant Building Group, LLC;

      h.   September 9-16, 2011, Tenant Building Group, LLC;

      i.   November 28-December 5, 2011, Tenant Building Group, LLC;

      j.   December 14-23, 2011, Tenant Building Group, LLC;

      k.   December 28, 2011-January 6, 2012, Olympian Construction;

      l.   March 13-May 14, 2012, Tenant Building Group, LLC;

      m.  May 23-June 22, 2012, Harmony Group.

46.    Mr. Dooley spent one hour on each day of these repeat tickets working for Trojan as per the 1-hour Policy, time for which Trojan has failed to compensate him.

47.    Mr. Dooley's final work assignment, a repeat ticket, was for Trojan's client Harmony Group at the Nashville Music City Center.  This project lasted from approximately

June 28, 2012 until January 16, 2013. After receiving this work assignment, Mr. Dooley pleaded with Trojan to allow him to go directly to the work site in the mornings, explaining that the streets were not safe for him to walk or bike to the Trojan office so early in the morning. In or about August 2012, Trojan made an exception to the 1-hour Policy for Mr. Dooley and allowed him to go directly to the work site in the morning.

48.     In addition to failing to compensate employees for compensable travel and wait time, Trojan also impermissibly deducts monies from employees' pay checks for safety equipment and carpool expenses.

49.     The U.S. Occupational Health and Safety Administration's regulations require employers to provide most items of personal protective equipment ("PPE"), such as hard hats and gloves, to employees at no cost to the employee.

50.     Trojan is aware of these regulations, as its parent company instructs all franchisees on the proper provision of PPE.

51.     Nevertheless, Trojan charges all employees for PPE. The cost of PPE is deducted from the employees' paychecks.

52.     At all times relevant, Trojan has charged the following amounts for standard PPE:

    a.   $10.00 for safety vests;

    b.   $2.00 for gloves;

    c.   $2.00 for safety glasses; and

    d.   $5.00 for hard hats.

53.     Trojan also charges employees for more specialized equipment, such as respirators, at $25, which is deducted from the employee's pay.

54.     Upon employment, Trojan provided Mr. Taylor with a safety vest, gloves, safety glasses, and a hard hat, but charged him for the items by deducting the cost from his paycheck.

55.     Upon employment, Trojan provided Mr. Dooley with a safety vest, gloves, safety glasses, and a hard hat, but charged him for the items by deducting the cost from his paycheck.

56.     In addition to the cost of PPE, Trojan deducted the cost of carpooling from Mr. Taylor's paycheck approximately 59 times.

57.     If Trojan did not require employees to carpool, Mr. Taylor would have ridden the bus or used other means of transportation to arrive at the work site and would not have incurred the expense of carpooling voluntarily.

58.     In addition to the cost of PPE, Trojan deducted the cost of carpooling from Mr. Dooley's paycheck approximately 168 times.

59.     Mr. Dooley is an avid bicyclist.  If Trojan did not require employees to carpool, Mr. Dooley would have bicycled to the work site and would not have incurred the expense of carpooling voluntarily.

60.     Both the carpooling deductions and the PPE deductions ("Impermissible Deductions") lower employees' rate of pay below minimum wage and time-and-a-half wage.

61.     Plaintiffs' hourly rate of pay differed for each work assignment and depended on the rate negotiated between Trojan and the client.  Most often, Plaintiffs were paid the federal minimum hourly wage.  Occasionally, Plaintiffs were paid the hourly prevailing wage for work on public construction projects.

62.     However, after deductions for PPE and carpooling, Plaintiffs' actual hourly pay rate would drop below the federal minimum wage or the local prevailing wage.

10

63. Most weeks, Plaintiffs worked approximately 40 hours, not including uncompensated travel and wait time, although this number varied slightly depending on the work assignments given in a particular week.

64. Plaintiffs and all other similarly-situated employees are entitled to be properly compensated by Trojan for all hours worked for Trojan, including all overtime pay for the hours worked in excess of 40 per week. Because Trojan's own policies mandate employees' early arrival at the Trojan office, Trojan knew that Plaintiffs and all others similarly situated were working hours in furtherance of their duties as Trojan employees, as required by Trojan, for which they were not being compensated.

65. At all relevant times, Trojan was aware of federal minimum wage and overtime requirements as well as prevailing wage requirements, and the hours being worked by Trojan's employees, but, nonetheless, willfully chose not to pay Plaintiffs and the other similarly-situated employees for that time.

**COLLECTIVE AND CLASS ACTION ALLEGATIONS**

66. At all times relevant, the Plaintiffs were employed by Trojan in the general labor category providing temporary labor services to Trojan's various clients. Plaintiffs bring their FLSA claims as an opt-in collective action on behalf of themselves and all others similarly situated pursuant to 29 U.S.C. § 216(b). Plaintiffs bring their state law claims as an opt-out class action on behalf of themselves and all others similarly situated pursuant to the law of the State of Tennessee.

67. Plaintiffs bring their FLSA claims on behalf of all similarly-situated employees who worked for Trojan providing temporary labor services at any time in the in the last three (3) years and (1) were subject to the 1-hour Policy or (2) had money withheld from their paychecks

11

for any Impermissible Deduction (collectively the "Collective Group" and each member a "Collective Group Member").

68. Upon information and belief, Trojan subjected Plaintiffs and all other similarly-situated employees to the 1-hour Policy and the Impermissible Deductions in a similar manner.

69. For the weeks that the time spent waiting, traveling, and doing other work activities pursuant to the 1-hour Policy would have resulted in an excess of 40 hours of work per week, Trojan failed to compensate Plaintiffs, and upon information and belief, all Collective Group Members for the hours worked in excess of 40 per week at a rate of one-and-one-half times their regular rate of pay.

70. For the weeks that the time spent waiting, traveling, and doing other work activities pursuant to the 1-hour Policy would have resulted in than 40 hours of work per week, Trojan failed to compensate Plaintiffs, and upon information and belief, all Collective Group Members for the hours worked at the federal minimum wage or local prevailing wage.

71. Plaintiffs and the Collective Group Members do not qualify as exempt employees, as defined by the FLSA or applicable Federal regulations.

72. Plaintiffs and the Collective Group Members are similarly situated, provide substantially similar services – labor – to Trojan, receive substantially similar pay, and are subject to Trojan's common employment practices and policies.

73. Trojan is liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Group.

74. Trojan has willfully and intentionally engaged in a widespread, continuous pattern and practice of violating Sections 206 and 207 of the FLSA, as detailed herein, by failing to properly compensate Plaintiffs and the Collective Group for time spent waiting, traveling, and

12

engaging in other work activities pursuant to the 1-hour Policy and by knowingly withholding amounts from their pay for Impermissible Deductions.

75.     As a result of the willfulness of Trojan's FLSA violations, a three-year statute of limitations from the filing of the original Complaint applies to such violations, pursuant to 29 U.S.C. § 255.

76.     As a result of Trojan's unlawful acts, Plaintiffs and the Collective Group have been deprived of regular rate compensation and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

77.     Plaintiffs bring their Tennessee state law claims on behalf of all persons who were, are, or will be employed by Trojan on or after the date that is six years before the filing of this Complaint who (1) were subject to the 1-hour Policy or (2) had their pay deducted for participating in a carpool from the Trojan office to the work site (collectively the "Class" and each member a "Class Member").

78.     The number and identity of the Class Members are readily ascertainable from Trojan's business records.

79.     Each Class Member's work assignments, hours, and rates of pay are also determinable from Trojan's records.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

80.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Plaintiffs believe the Class to number in the hundreds.

81.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by any member of the Class in a separate action.

82.     Questions of law and fact common to the Class as a whole predominate over any questions affecting only individual Class Members.  The questions of law and fact common to the Class include, but are not limited to, the following:

        a.   Whether the time the Class Members spend at the Trojan office and traveling from the Trojan office to the work site is compensable;

        b.   Whether Trojan received an economic benefit from the 1-hour Policy;

        c.   Whether Trojan was aware of the benefit it received from the 1-hour Policy;

        d.   Whether it would be unjust to allow Trojan to retain the benefit of the Class Members' compliance with the 1-hour at the Class Members' expense;

        e.   Whether Trojan's custom of requiring Class Members to carpool was a policy and, if so, the details of that policy;

        f.   Whether Trojan received an economic benefit from requiring employees to carpool to the work site.

83.     Trojan subjected all Class Members to the policies regarding repeat tickets and carpooling, as alleged herein, which resulted in a failure to pay regular wages and overtime compensation.  These policies and practices affected all Class Members similarly, and Trojan benefited from the same violations and wrongful acts as to each Class Member.  The Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

84. Plaintiffs are able to and will fairly and adequately protect the interests of the Class and have no interests antagonistic to those of the Class. Plaintiffs ire represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour and related cases.

85. A class action is superior to other available methods for the fair and efficient adjudication of the controversy — particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants as individuals. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

86. The adjudication of individual litigation claims would result in a great expenditure of court and public resources. Treating the claims as a class action would result in a significant savings of these costs. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for Trojan and result in the impairment of Class Members' rights. Rather, because all the issues before the Court are common and could be fairly determined in a class action context, the class action is superior to any the other available method of adjudication. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action, including subclassing.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**
**(29 U.S.C. §§ 206, 207)**

87.     Plaintiffs incorporate by reference and re-allege each and every allegation made above, as though fully set forth herein.

88.     Plaintiffs bring this claim on behalf of themselves and the Collective Group, as previously defined.

89.     Trojan is an employer, as defined by 29 U.S.C. § 203, and is otherwise covered by and subject to the provisions of the FLSA.

90.     Plaintiffs, at all times relevant, were Trojan's employees, as defined by 29 U.S.C. § 203.  They do not fall within a category of exemption from any provision of the FLSA.

91.     At all times relevant, Trojan has employed more than two employees and has had an annual dollar volume of sales or business done of at least $500,000.

92.     At all times relevant, Trojan was required to pay all of its employees, including Plaintiffs, a minimum wage, pursuant to either Section 6 of the FLSA, per hour of work performed.  29 U.S.C. § 206(a)(1).

93.     At all times relevant, Trojan was required to pay all of its employees, including Plaintiffs, "a rate not less than one and one-half times the regular rate at which [they were] employed," for all hours worked in excess of forty (40) per work week, pursuant to Section 7 of the FLSA.  29 U.S.C. § 207(a)(1).

94.     At all relevant times, Trojan was and is legally responsible for all of the unlawful conduct, policies, practices, acts and omissions described in the foregoing allegations as the employer of Plaintiffs, the Collective Group Members and the Class Members.

16

95.     At all relevant times, Trojan operated under and continues to operate under policies and practices that result in an actual pay rate to Plaintiffs and Collective Group Members below the rate mandated by 29 U.S.C. § 206.

96.     Specifically, Trojan violated 29 U.S.C. § 206 by failing to pay Plaintiffs and the Collective Group for the hour they worked for Trojan pursuant to the 1-hour Policy.

97.     Additionally, Trojan violated 29 U.S.C. § 206 by withholding Impermissible Deductions from Plaintiffs' and Collective Group Members' pay.

98.     Further, at all relevant times, Trojan operated under and continues to operate under policies and practices that result in an actual pay rate to Plaintiffs and Collective Group Members below the rate mandated by 29 U.S.C. § 207 for all hours worked in excess of forty (40) per week.

99.     Specifically, Trojan violated 29 U.S.C. § 207 by failing to pay Plaintiffs and the Collective Group for the hour they worked for Trojan pursuant to the 1-hour Policy.

100.    Additionally, Trojan violated 29 U.S.C. § 207 by withholding Impermissible Deductions from Plaintiffs' and Collective Group Members' pay.

101.    The hour that Plaintiffs and the Collective Group spent at the Trojan office or traveling from the Trojan office was not time in which they were waiting to receive a work ticket. The 1-hour Policy results in Plaintiffs and Collective Group being engaged to wait.

102.    No activities performed by Plaintiffs and the Collective Group in the one hour prior to arriving at the client's work site, including waiting, traveling, and other preparation activities, are preliminary or postliminary to their principal activities. To the contrary, this waiting, preparation and traveling was part and parcel of Plaintiffs' and Collective Group's principal employment activity for Trojan, providing on-call labor, as directed by Trojan.

17

103.    All activities performed by Plaintiffs and the Collective Group in the one hour prior to arriving at the client's work site, including waiting, traveling, and other preparation activities, are ordinary activities in the course of business for Trojan, are necessary to Trojan's business, and all benefit from the activities inures to Trojan itself.

104.    Under the 1-hour Policy, Plaintiffs and Collective Group Members are under Trojan's exclusive control.  They are not free to leave the Trojan office or to use the time for their own purposes.

105.    Under the 1-hour Policy, travel from the Trojan office to the client's work site is all in the day's work for Plaintiffs and Collective Group Members.  Trojan requires Plaintiffs and Collective Group Members to report to the Trojan office to sign in, receive instructions or specialty equipment, and receive carpool assignments, among other activities, prior to traveling to the client's site.

106.    Trojan has knowingly and willfully withheld Plaintiffs' and the Collective Group's wages in violation of 29 U.S.C. § 215(a)(2).

107.    Plaintiffs and the Collective Group have a private right of action against Trojan pursuant 29 U.S.C. § 216(b) for Trojan's willful minimum wage and overtime violations.

108.    Trojan possesses records reflecting the hours worked by Plaintiffs and the Collective Group Members throughout the relevant period.  These records will clarify the amount of damages suffered by each Collective Group Member due to Trojan's unlawful acts.

**COUNT II**
**UNJUST ENRICHMENT / QUANTUM MERIUT**
**(Tennessee state common law)**

109.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

18

110. Plaintiffs bring this claim on behalf of themselves and the Class, as previously defined.

111. Plaintiffs and the Class furnished Trojan with valuable services, *i.e.* their labor, undertaken for Trojan's sole benefit, which Trojan accepted and continues to accept, under circumstances which would render it unjust for Trojan not to pay Plaintiffs and the Class the full value of that labor.

112. Plaintiffs and the Class Members arrived at Trojan's office one hour prior to the client's designated start time to receive instructions, undertake preparation for the day, and carpool to the work site. Plaintiffs and the Class Members participated in mandatory carpools from the Trojan office to the work site as directed by Trojan. By doing so, Plaintiffs and the Class Members conferred a benefit upon Trojan for which they received no compensation.

113. Trojan knew that Plaintiffs and the Class Members lived in poverty and often teetered on the edge of homelessness, and took advantage of that vulnerability to require them to work one hour each morning without compensation and to force them to ride with unsafe drivers.

114. Trojan benefits from these policies and procedures in a number of ways: Trojan maximizes the amounts it charges its clients by eliminating employee absences and tardiness; Trojan is able to give instructions to the employees in an efficient manner; Trojan has time to receive any instructions from the client and implement the client's wishes prior to sending employees to the client's site; Trojan is able to communicate administrative and personnel procedures, policies, updates, and information to employees in an efficient manner; and Trojan maintains control over its workforce and, therefore, its relationships with its clients.

115. Plaintiffs and the Class Members received none of the economic benefit stemming from the 1-hour Policy and the carpooling requirement.

116.    As the party responsible for implementing the 1-hour Policy and the carpooling requirement, Trojan appreciated the value of the benefit conferred upon it by Plaintiffs and the Class through the operation of those policies and practices.

117.    Given the inequities between the parties, the lack of sophistication and vulnerability of many of the Class Members, and the amount of the profits to Trojan at the expense of the Class Members, it would be unjust for Trojan to be allowed to retain the benefit of its policies and practices without compensation to the Plaintiffs and the Class.

118.    Plaintiffs have exhausted all pre-suit remedies, if any, available to them. Plaintiffs and the Class have no remedy or right of recovery against any other source.

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, request the following relief:

A.    Designation of Plaintiffs as representatives of the Collective Group for the FLSA claims;

B.    Designation of Plaintiffs as representatives of the Class for the Tennessee state law claims;

C.    Certification of the FLSA claims as a collective action pursuant to the FLSA § 216(b);

D.    Certification of the Tennessee state law claims as a class action pursuant to Fed. R. Civ. Pro. 23;

E.    An injunction against Trojan and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

F.    An affirmative injunction against Trojan and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, requiring Defendant to post notice in its offices of its wrongdoing and employees' related rights and remedies;

20

G.      An award of all damages, including but not limited to unpaid wages and liquidated damages, permitted by the FLSA, 29 U.S.C. § 201 *et seq*., and supporting regulations to Plaintiffs and the Collective Group;

H.      An award of all damages, including but not limited to unpaid wages, disgorgement of profits earned and reimbursement of amounts improperly deducted, as permitted by the law of the State of Tennessee to Plaintiffs and the Class;

I.      Any and all civil penalties against Trojan available under applicable law;

J.      Pre- and post-judgment interest, as provided by law;

K.      Attorneys' fees and costs; and

L.      Such other legal or equitable relief as this Court shall deem just and proper.


Dated: February 11, 2013                    Respectfully Submitted,


OF COUNSEL:                                 */s/ James G. Stranch, III*
                                            James G. Stranch, III (TN #2542)
BRANSTETTER, STRANCH &                      Joe P. Leniski, Jr. (TN #22891)
JENNINGS, PLLC                              Karla M. Campbell (TN #27132)
227 Second Avenue North, 4th Floor          BRANSTETTER, STRANCH & JENNINGS, PLLC
Nashville, Tennessee 37201-1631             227 Second Avenue North, 4th Floor
Telephone: (615) 254-8801                   Nashville, Tennessee 37201-1631
Facsimile: (615) 255-5419                   Telephone: (615) 254-8801
                                            Facsimile: (615) 255-5419
                                            jstranch@branstetterlaw.com
                                            jleniski@branstetterlaw.com
                                            kcampbell@branstetterlaw.com

                                            *Attorneys for Plaintiffs and*
                                            *the Collective Group and the Class*


21